UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Criminal No. 05-311 (JRT/JJG) |
| Plaintiff, | |
| v. | **AMENDED REPORT & RECOMMENDATION** |
| **ROBERTO GAMA-NUNEZ,** | |
| Defendant. | |

APPEARANCES

John Docherty, Esq., Assistant United States Attorney, on behalf of Plaintiff United States of America

Andrea K. George, Esq., for Defendant Roberto Gama-Nunez

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on October 26, 2005, on the pretrial motions of Defendant Roberto Gama-Nunez. This matter is scheduled to be tried before the Honorable John R. Tunheim, United States District Court for the District of Minnesota on November 28, 2005. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

I.  INTRODUCTION

A Complaint was filed on September 1, 2005, against Defendant Roberto

1

Gama-Nunez and a bench warrant was issued for his arrest. An Indictment was filed against Defendant on September 20, 2005, charging him with one count of illegal re-entry after deportation. After a hearing before the Honorable Arthur J. Boylan, United States Magistrate Judge, United States District Court for the District of Minnesota, Defendant was ordered detained.

This Court held a pretrial motion hearing on October 26, 2005, at which Defendant was present and represented by counsel. The Government did not file any pre-trial motions. One witnesses for the Government testified at the hearing: Agent Stacey Burrows of the United States Department of Homeland Security. One exhibit was admitted into evidence: Government Exhibit 1 - "Warning as to Rights" form signed by the Defendant. .

Defendant requested and received permission to file post-hearing memoranda by Wednesday, November 2, 2005. The Government requested and received permission to file a memorandum by Wednesday, November 9, 2005. While the Defendant has made no additional filings, the Government has entered its post-hearing opposition memorandum to Defendant's Motion to Suppress.

## II.   FACTUAL BACKGROUND

On August 29, 2005, Defendant Gama-Nunez was stopped by the Ramsey County Sheriff's Department for a drug-related traffic offense. During the course of the traffic stop, an officer from the Ramsey County Sheriff's Department placed a telephone call to Department of Homeland Security Special Agent Stacy Burrows by telephone. Agent

Burrows testified that she asked the officer who called if the defendant had been given *Miranda* warnings and was told that *Miranda* warnings had been given. Agent Barrows testified that she then spoke to the defendant on the telephone.

Agent Burrows stated that once she confirmed that the defendant had been given *Miranda* warnings, she asked the defendant questions regarding his nationality and other biographical information, including question about his name, legal status, prior deportation, if any, and whether the defendant had a driver's license in his possession. Agent Borrows testified that she asked the defendant these questions to determine his alienage and deportability.

Following her August 29, 2005, conversation with the defendant, Agent Burrows conducted immigration and criminal records checks. These records checks revealed that the defendant had previously been deported on two separate occasions and had been convicted of an aggravated felony. Agent Burrows testified that she conducted a formal interview with the defendant on September 1, 2005. Agent Burrows testified that prior to engaging in conversation with the defendant, she read *Miranda* warnings to the defendant.

According to her testimony, Agent Burrows first asked the defendant if he could speak and read English, to which the defendant responded that he could both speak and read English. Agent Burrow then asked the defendant to read a line in the middle of the Miranda warning form, and after the defendant did so without difficulty, Agent Burrow asked the defendant to read the warning form through to its end, which he also did

3

without difficulty. Agent Burrows testified that she then read the entire Miranda warning form to the defendant. The form was then given to the defendant and the defendant signed the form. Form I-214 "Warning of Rights" bearing the initials of the defendant was entered at the hearing as Government's Exhibit 1. Agent Burrows than asked the defendant the same questions as she asked over the telephone on August 29, 2005, regarding Defendant Gama-Nunez's legal status and deportability, to which he gave the same or similar answers. Defendant Gama-Nunez has indicated, through his counsel's statement at the motions hearing, that he is not raising any objections to the voluntary nature of his statements during the September 1, 2005 interview with Agent Burrows.

## III.   DISCUSSION

The dispositive motions brought by Defendant Gama-Nunez are addressed in this Report and Recommendation. Defendant's non-dispositive motions were addressed in a separate Order.

### A.   **Defendant's Motion For Suppression of His Statements**

Defendant Gama-Nunez requests an order suppressing all statements, admissions, and answers made by the defendant prior to, at the time of, or subsequent to his arrest, on the basis that such statements were made without the benefit of legal counsel and in violation of his Fifth and Sixth Amendment rights, and that such statements, admissions, or answers were not given freely and voluntarily, thereby violating his Fourth Amendment and Fifth Amendment rights.

Before the Court are the defendant's statements given on August 29, 2005, and

September 1, 2005. Defendant Gama-Nunez contends he was not given *Miranda* warnings prior to his statements on August 29, 2005.

The Government contends that Defendant Gama-Nunez was given *Miranda* warnings, but even if *Miranda* warnings were not given to the defendant on August 29, 2005, such warnings were not required because Agent Burrows only asked the defendant for biographical information and her questions were not intended to elicit incriminating responses.

It is well-settled that routine biographical data is exempted from *Miranda*'s coverage. Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990); U.S. v. Brown, 101 F.3d 1272, 1274 (8th Cir. 1996) United States v. Horton, 873 F.2d 180, 181 n. 2 (8th Cir.1989). The Eighth Circuit has stated "[a] request for routine information necessary for basic identification purposes is not interrogation under *Miranda,* even if the information turns out to be incriminating. Only if the government agent should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged, will the question be subject to scrutiny." U.S. v. Brown, 101 F.3d at 1274 citing United States v. McLaughlin, 777 F.2d 388, 391-92 (8th Cir. 1985);. See also Muniz, 496 U.S. at 602 n. (during booking procedures, government may not ask questions "that are designed to elicit incriminatory admissions").

There is some question regarding the extent to which Agent Burrows questions

exceeded the boundaries of "biographical information." Agent Burrow's testified that her intent in questioning the defendant on August 29th was to ascertain his alienage and deportability.  However, it is not necessary for the Court to make a determination of whether or not Agent Burrows' questions to the defendant during her August 299th telephone conversation exceeded an inquiry into biographical and identification information to determine the admissibility of statements given by the defendant during the telephone conversation.  Therefore, the Court will not undertake such an analysis here.  An examination of the circumstances encompassing both the August 29th and September 1st interaction between the defendant and Agent Burrows provides ample evidence for the Court to find the defendant's statements to Agent Burrows on both occasions to be admissible.

In the context of similar statements made by a defendant in sequential interviews with law enforcement, it is well-settled that absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an un-warned admission does not warrant a presumption of compulsion. Oregon v. Elstad, 470 U.S. 298, 314 (1985).  A subsequent administration of *Miranda* to a suspect who has given a voluntary but un-warned statement ordinarily should suffice to remove conditions that preclude admission of the earlier statement. Id.

The statements made by the defendant regarding his identity and legal status to Agent Burrows by telephone on August 29, 2005, were made again by the defendant to

6

Agent Burrows during a formal interview on September 1, 2005, <u>after</u> the defendant sufficiently acknowledged the reading of the *Miranda* warnings.  In fact, the defendant has conceded that his statements on September 1, 2005, were made voluntarily. Accordingly, the statements made by Defendant Gama-Nunez are admissible and his motion to suppress his statements should be denied.

### B. Defendant's Motion to Suppress Evidence Obtained As A Result Of Search And Seizure

The parties agreed at the motions hearing that this motion was moot.  Thus, the motion should be denied as moot.

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

(1)   Defendant's Pretrial Motion To Suppress Statements, Admissions, and Answers (Doc. No. 17) should be **DENIED**.

(2) Defendant's Pretrial Motion To Suppress Evidence Obtained As A Result of Search and Seizure (Doc. No. 16) should be **DENIED AS MOOT**.


Dated: November 22, 2005          s/Jeanne J. Graham

                                                        _____
                                                        JEANNE J. GRAHAM
                                                        United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by November 28, 2005, a writing which specifically identifies those portions of this Report to which objections are being made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  All briefs filed under this rule shall be limited to ten pages.  A judge shall make a de novo determination of those portions to which objection is made.